```
UNITED STATES DISTRICT COURT                   (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
NORBERT WU, Individually and on    :  09 Civ. 6557 (RJH) (JCF)
Behalf Of All Similarly Situated   :  10 Civ. 6537 (RJH) (JCF)
Persons,                           :
                                   :         MEMORANDUM
                                   :         AND   ORDER
              Plaintiffs,          :
                                   :
     - against -                   :
                                   :
PEARSON EDUCATION INC.,            :
                                   :
              Defendant.           :
- - - - - - - - - - - - - - - - - -:
```
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

These related cases are putative class actions in which a photographer, Norbert Wu, alleges that Pearson Education Inc. ("Pearson") has infringed his copyrights and those of other photographers by including their images in its academic publications without obtaining the proper licenses. Mr. Wu now moves for an order enjoining Pearson from communicating with class members, compelling Pearson to produce all communications it has had with class members, and imposing sanctions on Pearson for allegedly misrepresenting the nature of its communications with class members. For the reasons that follow, the plaintiff's motion is denied.

Background

Mr. Wu contends that Pearson has "engaged in direct settlement

1

negotiations with members of the proposed class, including both photographers and stock photography vendors who were not represented by counsel, attempting to settle and otherwise compromise precisely the claims that are at issue in this action." (Memorandum of Law in Support of Plaintiff's Motion for a Preliminary Injunction and Other Relief ("Pl. Memo.") at 2). Further, the plaintiff asserts that Pearson has attempted to mislead the Court by initially denying that any such communications took place and then, when the communications were revealed, arguing that they were not improper. (Pl. Memo. at 1-2).

The plaintiff has proffered evidence of two instances in which Pearson had contact with members of the putative class. In the first, Carla Nolan, a Photo Permissions Editor for Pearson, sent an e-mail to Mark Gibson requesting "an extension to a license granted in 2006 for [Mr. Gibson's] image of the California state flag in the Elementary Social Studies Leveled Readers." (E-mail from Carla Nolan to Mark Gibson dated Dec. 3, 2010 ("Nolan 12/3/10 E-mail"), attached as Exh. A to Exh. 9 to Declaration of Danial A. Nelson dated March 18, 2011 ("Nelson Decl.")). Attached to the e-mail was a draft letter agreement stating that it "expresses our entire understanding and replaces any and all former understandings oral or written, relating to the subject matter hereof." (Letter Agreement dated Dec. 3, 2010, attached to Nolan 12/3/10 E-mail).

negotiations with members of the proposed class, including both photographers and stock photography vendors who were not represented by counsel, attempting to settle and otherwise compromise precisely the claims that are at issue in this action." (Memorandum of Law in Support of Plaintiff's Motion for a Preliminary Injunction and Other Relief ("Pl. Memo.") at 2). Further, the plaintiff asserts that Pearson has attempted to mislead the Court by initially denying that any such communications took place and then, when the communications were revealed, arguing that they were not improper. (Pl. Memo. at 1-2).

The plaintiff has proffered evidence of two instances in which Pearson had contact with members of the putative class. In the first, Carla Nolan, a Photo Permissions Editor for Pearson, sent an e-mail to Mark Gibson requesting "an extension to a license granted in 2006 for [Mr. Gibson's] image of the California state flag in the Elementary Social Studies Leveled Readers." (E-mail from Carla Nolan to Mark Gibson dated Dec. 3, 2010 ("Nolan 12/3/10 E-mail"), attached as Exh. A to Exh. 9 to Declaration of Danial A. Nelson dated March 18, 2011 ("Nelson Decl.")). Attached to the e-mail was a draft letter agreement stating that it "expresses our entire understanding and replaces any and all former understandings oral or written, relating to the subject matter hereof." (Letter Agreement dated Dec. 3, 2010, attached to Nolan 12/3/10 E-mail).

Also attached was a license request that identified the image at issue and characterized the anticipated usage as "Reuse (New Edition)." (License Request, attached to Nolan 12/3/10 E-mail). According to that document, the proposed license would authorize an unlimited print quantity. (License Request).

Audrey Gibson is the wife of Mark Gibson and the co-owner with him of Gibson Stock Photography, the entity that licenses his work. (Declaration of Audrey Gibson dated Feb. 10, 2011 ("Gibson Decl."), attached as Exh. B to Exh. 9 to Nelson Decl., ¶¶ 2-4). Upon receiving the e-mail from Ms. Nolan, Ms. Gibson became concerned about the reference to an unlimited print quantity and asked for information about Pearson's prior use of the image. (Gibson Decl., ¶¶ 6-7). Ms. Nolan responded with an e-mail indicating that she would provide the requested information only after the Gibsons entered into a confidentiality stipulation. The relevant portion of the e-mail states:

> Pearson considers manufacturing information as proprietary and confidential. Please confirm that any discussions that take place between you and Pearson (or your representatives) shall remain strictly confidential, including information regarding manufacturing practices. Please confirm that you agree not to publish, publicize or allow disclosure of the discussions or information to others in whole or in part for any other purpose. In the event you and Pearson fail to settle any claims that result from these discussions, please know that any settlement-related discussions (whether written or oral) shall be inadmissible for any legal proceedings.

(E-mail from Carla Nolan to Audrey Gibson dated Dec. 8, 2010, attached as Exh. C to Exh. 9 to Nelson Decl.).  When neither Ms. Gibson nor her husband responded, Julie Orr, Manager of Image Permissions for the Curriculum Group at Pearson, called and left a telephone message indicating that Pearson was operating under a deadline and would replace Mr. Gibson's photo with a different image if it did not receive an executed license agreement promptly. (Gibson Decl., ¶ 10; Declaration of Julie Orr dated Feb. 18, 2011 ("Orr Decl."), attached as Exh. A to Exh. 10 to Nelson Decl., ¶¶ 1, 13).  According to Ms. Gibson, Ms. Orr further stated that "Pearson 'certainly wants to settle and make good on what's been done in the past as far as this image is concerned.'"  (Gibson Decl., ¶ 10). When the Gibsons did not execute a license, Mr. Gibson's photo was removed from the publication.  (Orr Decl., ¶ 14).

Previously, on August 27, 2010, the Gibsons had received an e-mail from a different permissions editor at Pearson requesting a license to use one of Mr. Gibson's images in a new edition of Pearson's "Sidewalk Reader."  (Gibson Decl., ¶¶ 11-12; Orr Decl., ¶¶ 3-6).  At that time as well, Ms. Gibson requested information about prior use of the photo, and Pearson had asked for a stipulation of confidentiality.  (Gibson Decl., ¶¶ 12-14; Orr Decl., ¶ 7).  When the Gibsons did not agree to confidentiality, Pearson did not provide the requested information, and when the

4

Gibsons did not respond to the request for a new license, Pearson omitted Mr. Gibson's photo from the publication. (Orr Decl., ¶ 8).

The second instance of communications with a putative class member involved the photographer Carl Schneider. Mr. Schneider apparently initiated contact with Pearson, demanding that it cease and desist from using his photographs without permission and seeking payment for a retroactive license that would cover the allegedly unauthorized use. (E-mail from Kieran Doyle to Carl Schneider dated Dec. 30, 2010 ("Doyle 12/30/10 E-mail"), attached as Exh. E to Exh. 9 to Nelson Decl.; E-mail from Carl Schneider to Kieran Doyle dated Dec. 30, 2010 at 8:21 p.m. ("Schneider 1st 12/30/10 E-mail"), attached as part of Exh. B to Exh. 10 to Nelson Decl.; E-mail from Carl Schneider to Kieran Doyle dated Dec. 30, 2010 at 9:52 p.m. ("Schneider 2nd 12/30/10 E-mail"), attached as part of Exh. B to Exh. 10 to Nelson Decl.). Initially, counsel for Pearson resisted Mr. Schneider, indicating that because of the pendency of this case, Pearson could not negotiate with him until a class certification determination had been made unless he was represented by counsel. (Doyle 12/30/10 E-mail).

Mr. Schneider, however, would not be put off. He derided Pearson's suggestion that he retain counsel (Schneider 1st 12/30/10 E-mail) and stated:

Since Pearson is refusing to comply with my cease and

5

> desist demands, I will make another demand. I demand that Pearson immediately hold all revenues and profits from the sale of all textbooks and other publications that contain my photographs (without my permission) in a trust bank account for my benefit, until this is resolved.

(Schneider 2nd 12/30/10 E-mail). After Pearson's attorney again advised Mr. Schneider that it would be necessary for him to retain counsel before an agreement could be negotiated, Mr. Schneider responded that "you need to make sure that your client is aware that Pearson will be paying for all of my legal fees and expenses." (E-mail from Carl Schneider to Kieran Doyle dated Jan. 5, 2011 ("Schneider 1/5/11 E-mail"), attached as part of Exh. B to Exh. 10 to Nelson Decl. (emphasis omitted)). Mr. Schneider went on to threaten legal action, arguing that "fighting my claims in federal court will cost Pearson many times what it would cost for a simple retroactive license." (Schneider 1/5/11 E-mail (emphasis omitted)).

Pearson's counsel finally agreed to negotiate in light of Mr. Schneider's "unrelenting insistence" that it do so without requiring him to retain a lawyer and in light of the fact that any retroactive license would be granted to Mr. Schneider's agency, Ultimate Group, LLC, rather than to him individually. (E-mail from Kieran Doyle to Carl Schneider dated Jan. 11, 2011 ("Doyle 1/11/11 E-mail"), attached as part of Exh. B to Exh. 10 to Nelson Decl.).

However, Pearson conditioned negotiations with Mr. Schneider on his agreeing that Pearson was making no admission of wrongdoing and that the discussions would remain confidential. (Doyle 1/11/11 E-mail). Mr. Schneider responded with a host of demands and indicated he would "not agree to confidentiality prior to reaching a resolution." (E-mail from Carl Schneider to Kieran Doyle dated Jan. 11, 2011, attached as part of Exh. B to Exh. 10 to Nelson Decl.). Pearson's attorney then reiterated a willingness to negotiate but repeated that discussions would have to be predicated on a confidentiality agreement and no admission of wrongdoing. (E-mail from Kieran Doyle to Carl Schneider dated Jan. 13, 2011, attached as part of Exh. B to Exh. 10 to Nelson Decl.). Mr. Schneider replied again that he would not agree to confidentiality and gave Pearson a deadline for resolving the matter, failing which he promised to "retain[] legal council [sic] and [] instruct them to immediately move forward with our legal action." (E-mail from Carl Schneider to Kieran Doyle dated Jan. 13, 2011, attached as part of Exh. B to Exh. 10 to Nelson Decl.). The following day, Mr. Schneider again communicated with Pearson's counsel, accusing him of violating his fiduciary duty to his client and suggesting that Pearson's conduct was grounds for criminal prosecution. (E-mail from Carl Schneider to Kieran Doyle dated Jan. 14, 2011, attached as part of Exh. B to Exh. 10 to Nelson Decl.). There were

apparently no further communications between Mr. Schneider and Pearson.

In addition to asserting that Pearson has engaged in improper communications with class members, Mr. Wu accuses Pearson's counsel of making misrepresentations to the Court about those communications. On October 11, 2010, Mr. Wu's attorney wrote to counsel for Pearson expressing concern that Pearson "has been engaged in extensive negotiations with several putative class members in both Wu I and Wu II in an effort to compromise claims which are a part of those actions." (Letter of Dan Nelson dated Oct. 11, 2010, attached as Exh. 1 to Nelson Decl.). In response, Pearson's counsel stated that "[i]t is our understanding that Pearson has gone out of its way in discussions with photographers about ongoing business not to take steps that would have the effect of releasing any prior claims," and he asked for additional information about the communications to which Mr. Wu's attorney referred. (Letter of David W. Marston Jr. dated Oct. 11, 2010, attached as Exh. 2 to Nelson Decl.). Mr. Wu's counsel declined to provide further information but urged Pearson's attorney to "discuss the matter with [his] client again to set the record straight." (Letter of Dan Nelson dated Oct. 11, 2010, attached as Exh. 3 to Nelson Decl.). Apparently having received no further response, Mr. Wu's counsel wrote again two days later, indicating

that if he did not receive further information about Pearson's communications with class members, he would seek relief from the Court. (Letter of Dan Nelson dated Oct. 13, 2010, attached as Exh. 4 to Nelson Decl.). Thereafter, counsel for Pearson stated:

> We have spoken with our client and are not aware of any post-complaint communications with photographers not otherwise represented by counsel in which Pearson has attempted to secure any kind of release for the claims asserted in the litigation. Your unwillingness to provide any specifics concerning your allegation makes it difficult to assess the issue you are raising, to probe more deeply, or to see if there is any kind of misunderstanding.

(Letter of David W. Marston Jr. dated Oct. 18, 2010, attached as Exh. 5 to Nelson Decl.). Mr. Wu's attorney was not mollified. He responded with a letter asserting that Pearson's claim not to have engaged in "'any post-complaint communications with photographers not otherwise represented by counsel'" conflicted with its prior representations to the Court that it had had no such communications whatever. (Letter of Dan Nelson dated Oct. 19, 2010 ("Nelson 10/19/10 Letter"), attached as Exh. 6 to Nelson Decl., at 1). He further expressed concern that Pearson now appeared to be distinguishing between photographers and photographic agencies, which also own rights to some of the images utilized by Pearson. (Nelson 10/19/10 Letter at 2). Pearson's attorney responded by denying that there was any inconsistency between its ongoing business discussions with photographers and its representation that

9

it had not sought a release of any claims asserted in the litigation. (Letter of David W. Marston Jr. dated Oct. 25, 2010 ("Marston 10/25/10 Letter"), attached as Exh. 7 to Nelson Decl., at 1). He also argued that there is no prohibition against discussions of any sort with putative class members who are represented by separate counsel and that the classes as defined by the plaintiff in this litigation do not include stock photo agencies. (Marston 10/25/10 Letter at 1-2). Finally, in a letter to the Court relating to a discovery dispute, defendant's counsel reiterated that "[s]ince the outset of this litigation, Pearson has gone out of its way in ongoing business discussions with photographers to avoid either discussion of, or inclusion of, anything that could operate as a release of claims alleged in the complaints." (Letter of David W. Marston Jr. dated Nov. 17, 2010, attached as Exh. 8 to Nelson Decl., at 3 n.1). Thereafter, plaintiff's counsel raised his concerns with the Court by letter (Letter of Dan Nelson dated Feb. 11, 2011, attached as Exh. 9 to Nelson Decl.), and then filed the instant motion. Although an evidentiary hearing was held on May 9, 2011, neither party presented witnesses.

Discussion

    A. Nature of the Motion

Although the plaintiff initially couched his application as a

motion for a preliminary injunction (Pl. Memo. at 1), it is more accurately characterized as a request for an order under Rule 23 of the Federal Rules of Civil Procedure, which governs litigation of class actions.[1]  Pursuant to that Rule, "the court may issue orders that: . . . (C) impose conditions on the representative parties or on intervenors . . . [or] (E) deal with similar procedural matters."  Fed. R. Civ. P. 23(d)(1); see Gulf Oil Co. v. Bernard, 452 U.S. 89, 99 (1981).  Accordingly, I may properly address the plaintiff's motion by way of memorandum and order pursuant to 28 U.S.C. § 636(b)(1)(A).  See Castaneda v. Burger King Corp., No. C 08-4262, 2009 WL 2382688, at *1 (N.D. Cal. July 31, 2009) (magistrate judge deciding dispute regarding defendants' contacts with putative class action plaintiffs under referral for pretrial matters); Rankin v. Board of Education, 174 F.R.D. 695, 696 (D. Kan. 1997) (same).

   B. The Legal Standard

   "[A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties."  Gulf Oil,

---

[1] The plaintiff makes this distinction in his reply papers (Reply Memorandum of Law in Support of Plaintiff's Motion for a Preliminary Injunction and Other Relief ("Pl. Reply Memo.") at 1-2 & n. 1) and, indeed, argues that Rule 23 provides the proper framework for the analysis.  (Pl. Reply Memo. at 2-3).

452 U.S. at 100. In Gulf Oil, the Supreme Court directly addressed the standard for circumscribing contact with putative class members:

> [A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. Only such a determination can ensure that the court is furthering, rather than hindering, the policies embodied in the Federal Rules of Civil Procedure, especially Rule 23. In addition, such a weighing -- identifying the potential abuses being addressed -- should result in a carefully drawn order that limits speech as little as possible, consistent with the right of the parties under the circumstances.

Id. at 101-02 (footnotes omitted); accord In re School Asbestos Litigation, 842 F.2d 671, 679-80 (3d Cir. 1988); Rossini v. Ogilvy & Mather, Inc., 798 F.2d 590, 601-02 (2d Cir. 1986); Austen v. Catterton Partners V, LP, __ F. Supp. 2d __, __, No. 3:09cv1257, 2011 WL 1374035, at *6 (D. Conn. April 6, 2011); Ralph Oldsmobile Inc. v. General Motors Corp., No. 99 Civ. 4567, 2001 WL 1035132, at *2 (S.D.N.Y. Sept. 7, 2001). As is implicit in the Supreme Court's reference to the "conduct of counsel and parties," Gulf Oil, 452 U.S. at 100, an order may limit communications by plaintiffs, defendants, or both. See Austen, 2011 WL 1374035, at *7 ("[T]he principles set forth in Gulf Oil and other cases regarding a district court's authority to impose restrictions on communications with putative class members apply to restrictions on plaintiffs'

12

communications and defendants' communications alike."); Ralph Oldsmobile, 2001 WL 1035132, at *2 ("Although Gulf Oil concerned communications between counsel for the named plaintiff and potential class members, its rationale has been found to apply to communications between defendants and potential class members as well."). And an order may be issued before a class is certified as well as after, though the considerations warranting court intervention will differ. See Castaneda, 2009 WL 2382688, at *5; Ralph Oldsmobile, 2001 WL 1035132, at *2 ("[A] court's power to restrict communications between parties and potential class members, apply [sic] even before a class is certified.").

In general, communications that are litigation-neutral -- that do not alter the legal relationship between the defendants and members of a putative class -- are not subject to restriction. Indeed, defendants can even negotiate settlement of the claims of potential class members. See Christensen v. Kiewit-Murdock Investment Corp., 815 F.2d 206, 213 (2d Cir. 1987) ("Weight Watchers [of Philadelphia, Inc. v. Weight Watchers International, Inc., 455 F.2d 770 (2d Cir. 1972),] establishes that, at least prior to class certification, defendants do not violate Rule 23[] by negotiating settlements with potential members of a class."); accord Austen, 2011 WL 1374035, at *5. However, courts have a responsibility to restrict communications, including offers of

13

settlement, that are potentially coercive or misleading. See Gulf Oil, 42 U.S. at 104 ("We recognize the possibility of abuses in class-action litigation, and agree . . . that such abuses may implicate communications with potential class members."); In re School Asbestos Litigation, 842 F.2d at 680 ("Misleading communications to class members concerning the litigation pose a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally."). In some circumstances where there is an ongoing and unequal business or employment relationship between the parties, communications may be deemed inherently coercive. See In re Currency Conversion Fee Antitrust Litigation, 361 F. Supp. 2d 237, 253 (S.D.N.Y. 2005)  (holding arbitration clauses proffered by defendant credit card companies during litigation coercive and unenforceable where "the potential class consisted of cardholders who depended on defendants for their credit needs"); Ralph Oldsmobile, 2001 WL 1035132, at *4 (finding defendant's request for releases from putative class members potentially coercive where "potential class members depend upon the defendant for information, supplies, and credit" and where "[t]heir continued success and, indeed, existence may depend upon [defendant's] good will"). Furthermore, a communication may be coercive where the defendant interferes with participation by potential class members in the

lawsuit or misleads them by failing to reveal how some proposed transaction might affect their rights in the litigation. See Goody v. Jefferson County, No. CV-09-437, 2010 WL 3834025, at *3 (D. Idaho Sept. 23, 2010) (requiring corrective notice where defendant's communications with potential class members caused confusion about right to join suit); In re Currency Conversion Fee Antitrust Litigation, 361 F. Supp. 2d at 254 ("[D]efendants' unsupervised communications were improper because they sought to eliminate putative class members' rights in this litigation.").

C. Application to the Record

The plaintiff's motion in this case is premised on the belief that "Pearson has engaged in probably thousands of improper contacts with putative class members." (Tr. at 3-4).[2] However, counsel's unsworn allegations of misconduct cannot support an order restricting communications with potential class members. See Gulf Oil, 452 U.S. at 104 n.18. And the record here falls well short of substantiating the plaintiff's charges.

First, the plaintiff presented direct evidence relating to only two photographers, neither of whom testified at the evidentiary hearing. With respect to Mr. Schneider, Pearson's counsel made every effort to avoid any impropriety, stating that it

---

[2] "Tr." refers to the transcript of the hearing held on May 9, 2011.

15

could not negotiate with him about his claims to compensation under existing licenses prior to a class certification determination unless he was represented by counsel.  As Mr. Schneider became increasingly aggressive in his demands for a settlement, however, Pearson ultimately agreed to negotiate and attributed its about-face to the realization that the photos at issue were actually owned by Mr. Schneider's agency and not Mr. Schneider personally. This distinction was cosmetic: the plaintiff had long purported to represent not only photographers, but also other entities with copyrights in the images at issue. (Complaint in 10 Civ. 6537, ¶ 60; Amended Complaint in 09 Civ. 6557, ¶ 194).  Nevertheless, Pearson's willingness to negotiate what the plaintiff calls a "retroactive license" with Mr. Schneider that would compromise his claims in this action was a response to Mr. Schneider's unceasing demands; it was not initiated by Pearson.  And it was unique:  as will be discussed further below, there is no credible evidence of other attempts by Pearson to engage in such negotiations.

    The plaintiff also presented the affidavit of Audrey Gibson, the wife of the photographer Mark Gibson.  She contended that Julie Orr, on behalf of Pearson, expressed a desire to settle with respect to the past use of Mr. Gibson's images.  Ms. Orr denies making any such statement.  Given this dispute of fact, it is remarkable that the plaintiff, who has the burden of proof, failed

16

to proffer Ms. Gibson as a witness at the hearing. In any event, Ms. Orr's affidavit is the more credible, as it is more consistent with the resistance Pearson exhibited when confronted with Mr. Schneider's demands to negotiate.

Finally, the plaintiff argues that Pearson acknowledges initiating negotiations with many copyright holders. This is true, but only to the extent that Pearson sought to negotiate licenses on a going-forward basis. (Tr. at 23). Were there any ambiguity on this point, Pearson represented to the Court that the licenses for additional uses of photographs would "not deprive the putative class member of potential relief for overruns that occurred while the prior license agreement was in effect." (Tr. at 23; see also Tr. at 48-49). A new license entered into between Pearson and any putative class members does not threaten the class members' rights in the litigation and therefore does not provide a basis for restricting communications with class members. In sum, the plaintiff has not demonstrated the potential for abuse that would warrant imposition of an order restricting contact with the potential class. Since there is no evidence of improper conduct by Pearson, the defendant's prior communications with putative class members need not be disclosed.

Nor are sanctions against Pearson warranted. Pearson's counsel did not equivocate in their representations to the Court.

They did argue in the alternative, first contending that Pearson had not negotiated with potential class members and later maintaing that any such negotiations would not be improper. Parties are not precluded from presenting alternative arguments, and though it might have been better had Pearson made it clear from the outset that it was negotiating prospective but not retroactive licenses with certain photographers, it never misled the Court.

Conclusion

For the reasons set forth above, the plaintiff's motion is denied in all respects.

SO ORDERED.

*/s/ James C. Francis IV*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
      June 7, 2011

Copies mailed this date:

Danial A. Nelson, Esq.
Kevin P. McCulloch, Esq.
Nelson & McCulloch
100 Park Avenue
New York, New York 10017

David W. Marston, Jr., Esq.
Ezra D. Church, Esq.
Robert A. Particelli, III, Esq.
J. Gordon Cooney, Jr., Esq.
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103

19

Shana R. Cappell, Esq.
Namita E. Mani, Esq.
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, New York 10178