IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
NORBERT WU, Individually and on Behalf of :
All Similarly Situated Persons :
: Case No. 1:09-CV-06557-KBF
Plaintiff, :
: Hon. Katherine B. Forrest
- v - :
: Electronically Filed
PEARSON EDUCATION, INC., :
:
Defendant. :
---------------------------------------------------------------------X

**REPLY BRIEF OF DEFENDANT PEARSON EDUCATION, INC.
IN SUPPORT OF ITS MOTION TO DECERTIFY THE CLASS**

J. Gordon Cooney, Jr. (admitted *pro hac vice*)
David W. Marston Jr. (admitted *pro hac vice*)
Ezra D. Church (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000
(212) 963-5001 (facsimile)

Namita E. Mani
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
(212) 309-6000
(212) 309-6001 (facsimile)

DATED:  October 16, 2012          *Attorneys for Defendant Pearson Education, Inc.*

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................................ 1

II.   ARGUMENT...................................................................................................................... 2

       A.    This Court Has Broad Discretion To Decertify The Class .................................... 2

       B.    Mr. Wu's Attempt To Minimize Dukes Fails ........................................................ 3

       C.    Mr. Wu's Attempt To Minimize The Relevance Of Palmer Kane Fails ............... 3

       D.    The Terms Of Each License Are Subject To Individualized Interpretation,
Which Will Overwhelm Any Common Issues In This Case. ................................ 4

             1.    PVAs Impact The Terms Of Any Particular Licensing Agreement .......... 4

             2.    The Individualized Issues Raised By The "Battle of the Forms"
Require Decertification................................................................................ 6

             3.    Whether A Particular Print Limit Is A Covenant Or Condition Will
Require Individualized Analysis................................................................. 7

             4.    Agreements Between the Photographers And Their Agents Impact
The Terms Of Any Particular License ........................................................ 9

       E.    Class Litigation Is Not Superior ............................................................................ 10

III.  CONCLUSION................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

Boucher v. Syracuse Univ.,
    164 F.3d 113 (2d Cir. 1999) .................................................................................................. 2

Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    114 F.R.D. 48 (S.D.N.Y. 1987) ............................................................................................ 2

Jacobsen v. Katzer,
    535 F.3d 1373 (Fed. Cir. 2008) ............................................................................................ 8

Maisel v. McDougal Littell,
    2006 WL 1409019 (S.D.N.Y. May 22, 2006) ................................................................ 8, 9

Palmer Kane, LLC v. Scholastic, Corp.,
    2012 WL 2952898 (S.D.N.Y. July 16, 2012) ("Palmer Kane") .................................. passim

Psihoyos, et al. v. Pearson Educ., Inc.,
    855 F.Supp. 2d 103 (S.D.N.Y. 2012) .................................................................................. 9

Sabinson v. Jelin Prods.,
    55 N.Y.S.2d 850 (N.Y. Gen. Term 1945) ............................................................................ 6

Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.,
    262 F.3d 134 (2d Cir. 2001) .................................................................................................. 2

Sun Microsystems, Inc. v. Microsoft Corp.,
    188 F.3d 1115 (9th Cir. 1999). (Opp. at 31 n.13.) ............................................................... 8

Walmart Stores, Inc. v. Dukes,
    131 S.Ct. 2541 (2011) .................................................................................................. passim

Westways World Travel, Inc. v. AMR Corp.,
    265 F. App'x 472 (9th Cir. 2008) ........................................................................................ 2

Wood v. Houghton Mifflin Harcourt Publ'g Co.,
    589 F. Supp. 2d 1230 (D.Colo. 2008) .................................................................................. 8

Zenith Labs., Inc. v. Carter-Wallace, Inc.,
    530 F.R.D. 508 (3d Cir. 1976) .............................................................................................. 3

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 23 ........................................................................... passim

I. **INTRODUCTION**

Plaintiff Norbert Wu's Opposition to Pearson Education, Inc.'s ("Pearson") Motion to Decertify neither rebuts Pearson's grounds for decertification nor distinguishes this Court's class certification denial in Palmer Kane in any meaningful way.  This case is ripe for decertification.

First, Mr. Wu's Opposition relies principally on Judge Holwell's class certification decision, intimating that it precludes this Court from revisiting class certification.  This Court is not so constrained, and instead has broad discretion and indeed a continuing duty under Rule 23(c) to reassess the earlier class certification decision and to decertify if it determines that the class-certification criteria are not met.

Second, although the Supreme Court's decision in Dukes has been widely recognized as having clarified what plaintiffs must establish to show both commonality and predominance, Mr. Wu cites the decision only once and fails to meaningfully apply it to the many predominating individual and plaintiff-specific issues identified by Pearson.  Under Dukes, a question is not common just because class members may share a legal theory, because plaintiffs may be able to identify an abstract common legal issue, or because plaintiffs argue that all class members should prevail on their claims.  Instead, as this Court recognized in Palmer Kane, the question under Dukes is whether a class-wide proceeding can generate common *answers* based on the evidence.

Third, Mr. Wu brushes aside as somehow non-controlling and inapposite this Court's denial of class certification in Palmer Kane.  There, as here, significant differences in the terms of the agreements and understandings at issue precluded class certification.  Mr. Wu fails to demonstrate why this Court's well-reasoned decision in that case should not apply with at least equal force in this nearly identical action.  Indeed, this case presents additional predominating individual issues that were not present in Palmer Kane.

Fourth, the claims here require a Court and jury to determine the varying relevant contract

terms, their meaning and legal consequences, and whether they constitute covenants or conditions – a panoply of individualized determinations that predominate over any "common questions" and thus render this case inappropriate for class treatment.

Finally, particularly in light of the many similar individual lawsuits currently being pursued against Pearson for allegedly significant damages – including four by class counsel – Mr. Wu fails to show why class litigation is superior or necessary to enable photographers to advance their individual claims if they choose to do so.

## II.    ARGUMENT

### A.    This Court Has Broad Discretion To Decertify The Class.

Federal Rule of Civil Procedure 23(c)(1)(C) instructs that a class certification order "may be altered or amended before final judgment." "[T]he district court is often in the best position to assess the propriety of the class and has the ability, pursuant to Rule 23(c)(4)(B), to alter or modify the class, create subclasses, and decertify the class whenever warranted." E.g., Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd., 262 F.3d 134, 139 (2d Cir. 2001). The Second Circuit has made plain that district courts are "*'required* to reassess their class rulings as the case develops'" and "'*must define, redefine, subclass, and decertify as appropriate in response to the progression of the cases.*'" Boucher v. Syracuse Univ., 164 F.3d 113, 118 (2d Cir. 1999) (emphasis added). Once made, "a decision to decertify a class is subject to 'very limited review' and will be reversed only upon a 'strong showing that the district court's decision was a clear abuse of discretion.'" See Westways World Travel, Inc. v. AMR Corp., 265 F. App'x 472, 475 (9th Cir. 2008).

Not only must the Court reassess the prior class ruling under Rule 23(c), but, contrary to Mr. Wu's apparent suggestion, the law-of-the-case doctrine does not apply. Because Rule 23(c) directs district courts to review class certification rulings, an initial class determination "is not governed by law of the case and thus, upon transfer, a new judge is not precluded from reevaluating the certification in light of changed circumstances." Genden v. Merrill Lynch, Pierce, Fenner & Smith,

2

Inc., 114 F.R.D. 48, 54 (S.D.N.Y. 1987); see also, e.g., Zenith Labs., Inc. v. Carter-Wallace, Inc., 530 F.R.D. 508, 512 (3d Cir. 1976) (explaining that Rule 23(c)'s requirement that class certification orders "may be altered or amended before the decision on the merits" renders inapposite "rule of the case" doctrine).  The Court should exercise its discretion and decertify the class.

### B.   Mr. Wu's Attempt To Minimize Dukes Fails.

Mr. Wu seeks to downplay the U.S. Supreme Court's recent decision in Walmart Stores, Inc. v. Dukes, 131 S.Ct. 2541 (2011).  Although Dukes was decided before Judge Holwell's class certification order, Mr. Wu ignores that the parties never had a chance to fully brief Dukes.  Pearson had the opportunity to address Dukes only in its Notice of Supplemental Authority (Dkt. No. 123), and Judge Holwell failed to apply or even discuss it when analyzing whether common issues predominate over any individual questions in this case, (see generally Dkt. No. 127.)

Although Dukes has been widely acknowledged as having altered the landscape of class litigation by clarifying that there must be not only "common questions," but also "common answers" for purposes of Rule 23(a) and (b)(3), Mr. Wu cites the decision only once and does not meaningfully apply its analysis to the many significant individual issues identified by Pearson that will not yield common answers.  (See Opp. at 7.)  This Court has already properly applied Dukes in its decision in Palmer Kane and should do so again here.  See Palmer Kane, LLC v. Scholastic, Corp., 2012 WL 2952898, at *6-7 (S.D.N.Y. July 16, 2012) ("Palmer Kane").

### C.   Mr. Wu's Attempt To Minimize The Relevance Of Palmer Kane Fails.

Mr. Wu criticizes Pearson's reliance on this Court's decision in Palmer Kane, (Opp. at 17-18), apparently forgetting that the Court instructed the parties to review that decision and notify the Court if it warranted a motion for decertification in this case.  (See Dkt. No. 145.)  More significantly, Mr. Wu fails to meaningfully distinguish Palmer Kane from this case.

In Palmer Kane, the same class counsel alleged, among other things, that publisher "Scholastic [on a class-wide basis] exceeded the scope of licenses that it negotiated with agents of

3

rights holders or rights holders themselves." Palmer Kane at *7. Correctly recognizing the teaching of Dukes, this Court stated that "'[w]hat matters to class certification is not the raising of common questions – even in droves – but, rather the capacity of a classwide proceeding to generate common *answers*." Id. at *6 (citations omitted). Based on that standard, this Court denied certification because "to answer whether Scholastic in fact held a license to use those images will necessarily involve, and depend upon, inquiries into a multitude of individual relationships and interactions" so that "common questions of law or fact do not predominate over individual questions." Id. at *7.

Attempting to distinguish this case, Mr. Wu claims that Palmer Kane's analysis applies only to "late permission" claims, arguing that the Preferred Vendor Agreements ("PVAs") at issue there "may [have been] relevant to determining whether an implied license" for pre-contractual, but not excess use. (See Opp. at 17, 19.) But the implied license analysis in Palmer Kane applied to overrun claims as well. Indeed, as this Court observed, "even if, as plaintiff argues, there are in the invoices issued 'few, if any, discrepancies in the print-quantity terms' (for purposes of the overrun claim) . . . numerous inquiries will be required to determine the scope of the licenses granted because the terms of the Preferred Vendor Agreements differ depending upon the photo house that was a party to the agreements." Palmer Kane at *9.

In short, plaintiffs offer no principled reason to distinguish Palmer Kane. It properly instructs the Court's decision in this case.

### D. The Terms Of Each License Are Subject To Individualized Interpretation, Which Will Overwhelm Any Common Issues In This Case.[1]

1. PVAs Impact The Terms Of Any Particular Licensing Agreement.

Mr. Wu argues that PVAs have no bearing on his claims because, in his view, they will not

---

[1] Contrary to the statement in the Opposition, Pearson does not concede that Mr. Wu has satisfied the adequacy, typicality and numerosity requirements of Rule 23(a). (See, e.g., Opp. at 6.) Rather, Pearson has decided to focus its Motion on Rule 23's commonality and predominance requirements and the myriad of individualized issues predominating over any common questions which require decertification.

4

be determined to be part of the license agreements and do not create rights on their own. (Opp. at 18.) This claim is factually incorrect and ignores Dukes, because it answers the question without considering the evidence that must be evaluated to decide it. Indeed, as this Court has already recognized, PVAs "surely inform any analysis of the terms in the invoice." Palmer Kane at *9. Determining whether or not a PVA constitutes part of a particular license, in and of itself, will require an individualized review of the pertinent PVA, exchange of licensing documents, and the parties' courses of dealing. See id.

For example, many PVAs contain graduated pricing schedules for a range of print runs, typically including unlimited print runs, such that use of a photograph in excess of a particular print run is easily resolved under the relevant PVA. (See Motion at 15-16.) Thus, although Mr. Wu argues the conclusion that "[w]hether Pearson could have purchased different rights for a preset price is not relevant to determining liability," (Opp. at 18.), in fact, each PVA raises the question of whether, in light of its pricing tables and other contractual language, a photographer could even have a copyright claim for any alleged excess use. That determination only can be made in the context of a particular PVA, particular exchange of documents specific to a particular photo, and particular course of dealing and understandings between the particular agency and Pearson. This Court correctly concluded that the terms of varying PVAs must be considered in determining the scope of a particular license, including the print run, and that variations in PVAs contribute to predominating individual issues. Palmer Kane at *9.

Mr. Wu contends that PVAs do not create individual issues because they are standardized. (See Opp. at 20.) He ignores the documentary evidence and testimony discussed in Pearson's Motion demonstrating that PVAs were individually negotiated and vary on issues that impact the claims here. (See, e.g., Motion at 14-18; Soares Decl.) Mr. Wu extracts a few sentences from a March 9, 2004 letter to Pearson's preferred vendors that indicates Pearson sought some

standardization of PVAs.  (See Opp. at 20.)  The letter proves too much.  Indeed, to the extent Pearson sought to standardize some aspects of the PVAs in 2004, this only suggests that the PVAs in effect at that time *were not standardized*.  Mr. Wu has argued that the relevant class period extends to at least 2000, rendering relevant the PVAs that pre-date 2004.  But most importantly, in the final analysis, the PVA agreements actually signed by Pearson reflect individualized negotiation and substantial variation in their terms.  (See Motion at 15-17.)

    2.  The Individualized Issues Raised By The "Battle of the Forms" Require Decertification.

  This case has even more individualized facts than Palmer Kane because it involves thousands of programs (whereas Palmer Kane involved only one) and a non-standardized exchange of documents relating to each agreement at issue.  Mr. Wu argues that Pearson's "battle of the forms" argument is somehow irrelevant because the "print run" is the "most important term" and is not varied by other terms of the license.  (See Opp. at 23, 27.)  It is axiomatic, however, that "single clauses may not be construed by taking them out of their context and giving them an interpretation separate from the contract of which they are a part."  E.g., Sabinson v. Jelin Prods., 55 N.Y.S.2d 850, 852 (N.Y. Gen. Term 1945); (see also Motion at 26-27.)  Mr. Wu incorrectly dismisses this basic tenet of hornbook contract law and the real differences among the many contract documents that bear directly on the meaning of a print term and the consequences of exceeding it.

  For instance, Mr. Wu ignores the varying terms and conditions bearing on plaintiffs' right to recover in this case, including preconditions to suits, provisions addressing the consequences of excessive use, liquidated damages provisions, and provisions limiting liability and available legal remedies, arbitration clauses, venue clauses and choice of law clauses.  (See Motion at 24.)

  Nor does Mr. Wu pay any attention to the individualized interpretive questions impacting the scope of the print term, such as whether it encompasses electronic use – an inquiry that often requires reference to the relevant PVA or other evidence beyond the billing and invoice documents.

6

(See Motion at 28-29.)  Instead, Mr. Wu wrongly asserts that Pearson should be estopped from relying on the "battle of the forms" because he incorrectly claims Pearson previously argued that an invoice alone creates an enforceable agreement.  (Opp. at 25-26.)  Pearson has consistently argued that a review of all contractual documents and courses of dealing is required to understand the terms of a particular license agreement, and continues to do so here.[2]

In his final attempt to end-run Pearson's "battle of the forms" argument, Mr. Wu contends that some of the individual issues can be eliminated because the class definition includes "only those rights holders who granted Pearson permission to use an image at a print run that was less than the actual quantity."  (Opp. at 28.)  With all due respect, Judge Holwell's attempt to simply define individual issues out of the class does not eliminate the predominating individual issues – instead, it merely shifts those questions to a different time and stage of the case, and renders the class "unascertainable."  (See Motion at 33-35.)  Mr. Wu does not respond to Pearson's argument that the improper class definition – requiring a resolution of thousands of legal and fact issues – also requires decertification.  (Id.)

In sum, to determine the terms of any particular license, the Court must review at least the respective billing request, invoice, the terms and conditions that may be incorporated into the invoice, the terms of any pertinent PVA, and the parties' courses of dealing.  This case thus eludes class-wide resolution.  (See Motion at 25-26.)

   3. <u>Whether A Particular Print Limit Is A Covenant Or Condition Will Require Individualized Analysis</u>.

Although the outcome-dispositive determination of whether a particular contract term is a covenant or condition requires a highly specific inquiry into the terms of the particular agreement

---

[2] Mr. Wu cites the motion to dismiss briefing in this case and <u>Cole</u>, incorrectly claiming that Pearson argued that the invoices provide the final terms of the license.  Pearson simply argued that arbitration provisions in invoices should be enforced where plaintiff had pled that his claims arose from those invoices.  (See Dkt. No. 24 at 3; <u>Cole</u>, 10-cv-7523 (JFK), Dkt. No. 6 at 4, S.D.N.Y.)

7

and the understandings of the particular parties under varying state laws, Mr. Wu ignores the governing law concerning this issue and simply proclaims that a print run limitation is always a condition of a license. (See Opp. at 32.) He urges this conclusion without considering the individualized evidence the Court must consider to potentially reach it, in violation of Dukes. Rather than confront either the governing state-law principles or the individualized contract terms that would have to be evaluated, Mr. Wu references other lawsuits filed by photographers or agencies against publishers throughout the country contending that none of the courts in those case has held that such provisions are "contractual covenants." (Id. at 32 n. 15.)

      Despite claiming that Pearson "conspicuously ignores a significant body of case law directly on point," (Opp. at 30), Mr. Wu has not cited a single case where Pearson's covenant argument has been considered and rejected.[3] Mr. Wu principally relies on Wood v. Houghton Mifflin Harcourt Publ'g Co., 589 F. Supp. 2d 1230 (D.Colo. 2008). But that court did not determine whether a print run limitation is a covenant or review the type of contractual documents, such as PVAs, at issue here. Id. at 141-1242. It merely found that the license at issue permitted only up to 40,000 copies. See id. By contrast, in a case similar to Mr. Wu's, Judge McKenna explicitly stated that "exceeding the apparent 40,000 limit of the license can be reasonably construed as either an infringement of plaintiff's copyright or a breach of the 1998 license," and left the issue for the arbitrator to decide. Maisel v. McDougal Littell, 2006 WL 1409019, at *3 (S.D.N.Y. May 22, 2006).

      The fact remains, to make the outcome-dispositive determination whether a print term in a particular agreement is a covenant or a condition, the Court must, for each license agreement,

---

[3] Aside from listing all current, similar cases against various publishers in which the courts have not decided the "covenant" issue, Mr. Wu relies, among other cases, on Sun Microsystems, Inc. v. Microsoft Corp., 188 F.3d 1115, (9th Cir. 1999). (Opp. at 31 n.13.) In Sun, the court did not decide, but remanded for determination, whether the terms at issue "are license restrictions or separate covenants." Sun, 188 F.3d at 1122-23. The court further confirmed that whether a license term is a covenant or condition is an individual determination "requir[ing] us to construe the license." Id. at 1122; see also, e.g., Jacobsen v. Katzer, 535 F.3d 1373, 1382 (Fed. Cir. 2008) (particular license contained condition because it included express conditional language).

8

examine the relevant contract terms, PVAs, and the parties' course of conduct. (<u>See id</u>.)

        4.    <u>Agreements Between the Photographers And Their Agents Impact The Terms Of Any Particular License</u>.

Mr. Wu argues that the agreements between photographers and their agents are not relevant to the interpretation of the license agreements, because they supposedly do not grant "rights in favor of any downstream customers." (Opp. at 21.) Again, Mr. Wu argues the conclusion without acknowledging the individualized evidence that would need to be considered to reach it. Among other things, these agreements shed light on or control the question of whether the photographer has standing to sue for violations of a particular license agreement and may provide necessary extrinsic evidence to clarify ambiguities or missing terms in the various licensing documents.

First, while conceding that provisions regarding the right and procedure for bringing claims related to the photos may vary, Mr. Wu argues that any differences are inconsequential because these provisions cannot deprive a copyright holder of standing to sue. (<u>See</u> Opp. at 22.) Mr. Wu does not cite any authority for the argument that this issue can be decided without interpreting the relevant terms in each particular agreement. (<u>See id</u>.) In fact, in the case on which Mr. Wu principally relies, the court closely analyzed the particular contract terms at issue before concluding that those particular terms did not deprive the copyright owner of standing to sue. <u>See</u> <u>Psihoyos, et al. v. Pearson Educ., Inc.</u>, 855 F.Supp. 2d 103, 113-14 (S.D.N.Y. 2012). Moreover, the rule discussed in <u>Psihoyos</u> applies only if Mr. Wu's claims constitute copyright infringement, not mere breaches of contract, depending on contact-specific evidence about whether a print overrun is a copyright infringement as opposed to a breach of contract. This will depend on an individualized analysis of the agreements at issue, including whether the print run is a covenant or condition under the differing applicable states' laws.

Second, the agreements often specify that the agencies can license photographs subject to restrictions the photographers may place on the licenses. (<u>See</u> Motion at 18-19.) These grants or

restrictions of authority may vary from photographer-to-photographer and claim-to-claim. (See id.). Where the license documents between Pearson and an agency for a particular photograph contain ambiguous terms, (e.g., whether the print run encompasses electronic use), the agreements and dealings between photographers and agency, may provide relevant extrinsic evidence informing the parties' intent, introducing yet another layer of individualized analysis in this case.

### E. Class Litigation Is Not Superior.

Mr. Wu argues that a class action is the "superior" way to resolve the instant claims and that many class members could not obtain relief without it. (Opp. at 33-35.) The "dozens" of lawsuits referenced in Mr. Wu's Opposition and currently being pursued by individual plaintiffs, however, contradict this argument. (See Opp. at 33, 32 n.15.) In fact, class counsel represent a number of photographers pursuing their own cases against Pearson, despite pendency of this class action – filing two of them in just the last few months. See Psihoyos (I), 10-cv-5912 (JPO), S.D.N.Y., filed Aug. 5, 2010; Psihoyos (II), 11-cv-5187 (JPO), S.D.N.Y., filed July 26, 2011 (Psihoyos II); Cole, 10-cv-7523 (JFK), S.D.N.Y., filed Oct. 1, 2010; Schneider, 12-cv-6392 (JPO), S.D.N.Y., filed Aug. 21, 2012; Cole, Demand for Arbitration, filed Aug. 30, 2012.

Mr. Wu also claims that photographers are unlikely to individually pursue claims against Pearson for fear that their business will suffer. (See Opp. at 34-35.) Mr. Wu's claim is not only unsupported, but irrelevant. While Pearson is free to choose with which photographers or agencies it wishes to conduct business, class counsel and their clients have not been dissuaded from bringing individual actions. (See, e.g., Opp. at 32 n.15.) Most importantly, whether Pearson elects to do new business with photographers who are suing has no bearing on whether plaintiff has met his continuing burden of satisfying all of the Rule 23 requirements – which he has failed to do here.

## III. CONCLUSION

For all of the foregoing reasons and those stated in its opening brief, Pearson respectfully requests that the Court decertify the class.

10

| | |
|---|---|
| Dated: October 16, 2012 | By:   /s Ezra D. Church   |

Namita E. Mani  
MORGAN, LEWIS & BOCKIUS LLP  
101 Park Avenue  
New York, New York 10178  
(212) 309-6000  
(212) 309-6001 (facsimile)

J. Gordon Cooney, Jr. (admitted *pro hac vice*)  
David W. Marston Jr. (admitted *pro hac vice*)  
Ezra D. Church (admitted *pro hac vice*)  
MORGAN, LEWIS & BOCKIUS LLP  
1701 Market Street  
Philadelphia, PA 19103  
(215) 963-5000  
(212) 963-5001 (facsimile)

*Attorneys for Defendant Pearson Education, Inc.*

12

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon the following Plaintiff's counsel via electronic mail.

>Danial Nelson
>dnelson@nelsonmcculloch.com
>Kevin P. McCulloch
>kmcculloch@nelsonmcculloch.com
>Nelson & McCulloch LLP
>The Chrysler Building
>405 Lexington Avenue, 26th Floor
>New York, New York 10174

DATED:      October 16, 2012                                /s Ezra D. Church
                                                            Ezra D. Church